UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BELDEN INVESTMENTS, L.L.C.

CIVIL ACTION

VERSUS

NO. 22-62-JWD-RLB

PHARAOH OIL & GAS, INC., ET AL.

RULING AND ORDER

This matter comes before the Court on the *Re-Urged Rule 12(b)(6) Motion to Dismiss* (Doc. 31) (the "*Re-Urged MTD*") filed by SWEPI LLC ("SWEPI"), successor to SWEPI LP, and Shell Legacy Holdings, LLC. Plaintiff Belden Investments, L.L.C., ("Belden" or "Plaintiff") opposes the motion. (Doc. 34.) SWEPI has filed a reply. (Doc. 35.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, SWEPI's *Re-Urged MTD* is granted.

I.    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

A.  **Relevant Allegations in the Operative Petition**

The following factual allegations are primarily taken from Plaintiff's *Second Supplemental, Amending, and Restated Petition for Breach of Contract, Open Account, and/or Unjust Enrichment* ("*Sec. Am. Pet.*") (Doc. 26). The well-pled allegations are assumed to be true for purposes of this motion. *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citation omitted).

At some point prior to 2010, the State of Louisiana, through the Department of Natural Resources, directed "all of the oil and gas companies that had ever operated in the Bayou Sorrel Field," including SWEPI, to begin steps to clean up and restore the Bayou Sorrel Field. (*Sec. Am.*

*Pet.*, Doc. 26 at 3). After this directive, SWEPI and other oil and gas companies that had been operating in the Bayou Sorrel Field established a monetary fund for the clean-up (the "Bayou Sorrel Clean Up Fund"). (*Id.*) SWEPI was in control of the "issuance of payments to vendors that render services to clean up and restore the Bayou Sorrel Field pursuant to the [Department of Natural Resources] Directives." (*Id.*)

On October 28, 2010, SWEPI and National Energy Group, Inc. ("NEGI") contracted with Pharaoh Oil & Gas, Inc. ("Pharaoh"), through a Reimbursement Agreement (Doc 8-2), to perform the clean-up of Bayou Sorrel Oil and Gas Field located in Iberville Parish, Louisiana. (*Id.* (citing Doc. 8-2).) As part of this Reimbursement Agreement, Pharaoh was expected to perform in accordance with a "Cooperative Agreement" that Pharaoh had entered into with the State of Louisiana. (Doc. 8-2 at 2.)[1]

In June 2013, Belden entered into an oral contract with Pharaoh, in which Pharaoh subcontracted Belden for the services that SWEPI had retained Pharaoh to perform. (Doc. 26 at 4.) Belden performed these services and provided goods over approximately eight months. (*Id.*) During this time, Belden sent monthly invoices to Pharaoh. (*Id.*) In total, Belden charged Pharaoh $1,087,386.68. (*Id.*) SWEPI issued funds to Pharaoh "to pay some of Belden's outstanding invoices." (*Id*. at 5.) On January 5, 2015, Pharaoh paid Belden $200,000 to satisfy part of the debt owed, leaving a balance of $887,386.68.

On May 15, 2015, Pharaoh wrote SWEPI, requesting additional funds to pay Belden. (*Id*. at 6 (citing Doc. 8-4).) SWEPI requested that Pharaoh provide it with a Work Plan and with all future invoices associated with the Bayou Sorrel clean-up for approval, and Pharaoh indicated it

---

[1] While the Cooperative Agreement is mentioned in the Reimbursement Agreement, it was not attached to Exhibit 8-2 and was not addressed in the *Sec. Am. Pet.* There is no further explanation of the terms of the Cooperative Agreement.

would comply with this request. (*Id.* at 6–7 (citing Doc. 8-3).) No additional payments were made to Belden. (*Id.* at 7.)

### B. Relevant Procedural Background

On July 20, 2016, Belden filed its original *Petition for Breach of Contract and/or Open Account* ("*Petition*") against Pharaoh in the 18th Judicial District for the Parish of Iberville, State of Louisiana. (Doc. 1-3 at 3–6.) On December 28, 2021, Belden filed a *Supplemental and Amending [Petition]*, adding SWEPI LP as a Defendant. (Doc. 1-3 at 9–11.) On January 28, 2022, SWEPI LP filed a *Notice of Removal* bringing the action to this Court. (Doc. 1.)

On February 9, 2022, SWEPI LP filed a *Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion for a More Definite Statement* (Doc. 6) ("*Original MTD*"). Belden eventually filed a *Motion for Leave to File [Second Amended Petition]* (Doc. 24), which this Court granted on August 30, 2022, (Doc. 25). In the same order, the Court denied SWEPI's *Original MTD* without prejudice to SWEPI LP's right to re-urge any of those arguments in response to the latest petition. (*Id.*)

Belden's *Second Amended Petition* added SWEPI LLC and Shell Legacy Holdings, LLC as defendants. (Doc. 26 at 2.) In its new complaint, Belden asserted a claim against Pharaoh for direct damages in the amount of $887,386.68 resulting from Pharaoh's breach of contract/refusal to pay on an open account and/or, alternatively, against SWEPI for SWEPI's unjust enrichment. (*Id.* at 8.) Belden also asserted a claim for consequential damages against Pharaoh resulting from Pharaoh's breach of contract or, alternatively, against both defendants for Pharaoh's and SWEPI's unjust enrichment. (*Id.*) SWEPI then filed the instant *Re-Urged MTD* on September 13, 2022. (Doc. 31.)

## II.    RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, No. 21-10133, 2023 WL 5316716, at *3 (5th Cir. Aug. 18, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a

4

reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). But, "[a]lthough a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference)).

### III.   DISCUSSION

#### A.  Parties' Arguments

##### 1.  SWEPI's Original Memorandum (Doc. 31-1)

SWEPI's main argument is that Plaintiff cannot meet the elements of an unjust enrichment claim. (Doc. 31-1 at 5.) Those elements are:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed

> when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature.

*Minyard v. Curtis Prods., Inc.*, 205 So. 2d 422, 432 (La. 1968).

SWEPI claims that Plaintiff cannot meet any of these five elements, but it specifically points to the fifth as precluding the unjust enrichment claim. (Doc. 31-1 at 5.) SWEPI says that the breach of contract and open account claims against Pharaoh preclude any unjust enrichment claim against SWEPI, as they are other remedies available at law. (*Id.* at 6.) SWEPI cites Fifth Circuit precedent, saying, "Louisiana courts have strictly enforced the rule that unjust enrichment is a subsidiary remedy, particularly [that] it is not available if the claim is based on a relationship controlled by an enforceable contract." (*Id.* (citing *Drs. Bethea, Moustoukas and Weaver L.L.C. v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004)) (citations omitted).)

SWEPI points out that "it is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied." (*Id.* at 6–7 (citing *Garber v. Badon & Ranier*, 2007-1497 (La. App. 3 Cir. 4/2/08); 981 So. 2d 92, 100).) SWEPI argues that since Plaintiff pled claims for breach of contract and suit on open account, it is precluded from bringing an unjust enrichment claim against SWEPI. (*Id.* at 7 (citing *Walters v. MedSouth Rec. Mgmt. L.L.C.*, 2010-0353 (La. 6/4/10); 38 So. 3d 243, 244).)

SWEPI also claims that any remedy that is sought by Plaintiff must be sought from Pharaoh, as Pharaoh was party to the alleged contract. (*Id.* at 8 (citing *Insulation Techs., Inc. v. Indus. Lab. & Equip. Servs., Inc.*, 2013-0194 (La. App. 4 Cir. 8/14/13); 122 So. 3d 1146.)

SWEPI acknowledges that an unjust enrichment claim may be brought as alternative to a breach of contract claim against the same defendant. (*Id.* at 9–10 (citing *U.S. ex rel. Sun Coast Contracting Servs., L.L.C. v. DQSI, L.L.C.*, No. 13-568, 2014 WL 7246936 (M.D. La. Dec. 17, 2014) (Jackson, C.J.); *Cent. Facilities Operating Co. v. Cinemark USA, Inc.*, 36 F. Supp. 3d 700

6

(M.D. La. 2014) (Brady, J.); *Perez v. Util. Constructors, Inc.*, No. 15-4675, 2016 WL 5930877

(E.D. La. Oct. 13, 2016) (Africk, J.)).) SWEPI includes a footnote argument claiming that the

Louisiana Oil Well Lien Act ("LOWLA") gives Plaintiff another remedy at law that has since

prescribed. (*Id.* at 9 n.20.)

### 2. *Plaintiff's Opposition (Doc. 34)*

Plaintiff responds that it can meet all five elements of unjust enrichment. (Doc. 34 at 4.)

Specifically, Plaintiff contends that it alleged enrichment, impoverishment, a connection between

the two, and that there was no justification for the enrichment. (*Id.* at 5–6.)

Plaintiff maintains that it can meet the fifth element—that there is no other remedy

available at law. (*Id.* at 6.) Plaintiff cites several cases for the proposition that Louisiana law allows

an unjust enrichment claim to be brought as an alternative to a breach of contract claim when the

validity of the contract is in dispute. (*Id.* at 6-7.) Plaintiff asserts in the Opposition that the "validity

or existence of [the oral] contract has been long contested." (*Id.* at 7.) Plaintiff argues that the

alleged contract "creates no remedies of law *as against SWEPI*, an undisputed beneficiary of the

clean-up operations performed by Belden . . . ." (*Id.*) Plaintiff says that *Walters* (which was cited

by SWEPI) has been narrowly interpreted by this Court "to only preclude unjust enrichment claims

from being pled *alongside tort claims*." (*Id.* (citing *Cent. Facilities Operating Co.*, 36 F. Supp. 3d

at 708, n.5 (Brady, J.) (citing *Prop. One, Inc. v. USAgencies, L.L.C.*, No. 11-453, 830 F. Supp. 2d

170, 175 (M.D. La. Nov. 15, 2011))).)

Plaintiff also cites to *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, saying that the

Louisiana Supreme Court "granted an unjust enrichment claim against a third party who had

benefitted from an allegedly null contract executed between the plaintiff and a mortgagee." (*Id.* at

6 (citing *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So. 2d 116, 123 (La. 1974).)

Plaintiff contends that there was a disagreement as to the cause of the contract (cause being "the reason why a party obligates himself"). (*Id.* at 11 (citing La. Civ. Code art. 1967).) Plaintiff argues that because it envisioned a bilateral contract and Pharaoh envisioned a unilateral contract, there was no cause for the contract. (*Id.*) Plaintiff asserts that it agreed to the contract with the understanding that it would be obligated to perform, and Pharaoh would be obligated to pay, but says Pharaoh's interpretation of the contract would obligate Plaintiff to perform and Pharaoh would not be obligated to pay. (*Id.* at 10.) Plaintiff claims that until the validity of the contract is established, there is a possibility that it has no available remedy at law. (*Id.* at 12 (citing *Perez*, 2016 WL 5930877 at *2).) Plaintiff says that LOWLA does not apply to it because LOWLA has an exception for the plugging and abandonment of wells, which was the nature of Plaintiff's work at the Bayou Sorrel Field. (*Id.* at 14.)

### 3. *SWEPI's Reply (Doc. 35)*

In reply, SWEPI argues that any unjust enrichment claim must be brought against Pharaoh, not SWEPI. (Doc. 35 at 2.) SWEPI says, "unjust enrichment is precluded when the available remedy at law is against someone other than the person against whom the claim is presently asserted." (*Id.* at 2–3 (quoting *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 707 (W.D. La. June 19, 2014) (Hill, M.J.)).) These remedies, SWEPI claims, are the breach of contract, suit on open account, and unjust enrichment claims against Pharaoh. (*Id.*)

SWEPI counters Plaintiff's citation of *Edmonston* by saying, in that case, "the third party was a second mortgage company who specifically assumed the plaintiff's property and encumbrances, including the debts owed to the first mortgage company." (*Id.*, n. 3.) SWEPI maintains that since Plaintiff never entered into an agreement with Plaintiff or assumed the debts owed to Plaintiff, the case is distinguishable. (*Id.*) SWEPI finally claims that as unjust enrichment

is a quasi-contractual claim, Plaintiff could only recover from the other party to the contract, Pharaoh. (*Id.* at 3 (citing *Cent. Facilities Operating Co.*, 36 F. Supp. 3d at 707).)

### B.  Law and Analysis

In sum, the Court will grant SWEPI's *Re-Urged MTD*. Plaintiff is correct that Louisiana law allows an unjust enrichment claim to be pled in the alternative when the validity of the contract is in dispute. However, here, even construing the allegations of the *Second Amended Petition* in a light most favorable to Plaintiff and drawing reasonable inferences in its favor, the operative complaint does not allege a dispute as to the existence or validity of the contract. Further, because there is an adequate remedy at law available—specifically, Plaintiff's breach of contract claim against Pharoah—Plaintiff has no viable unjust enrichment claim against SWEPI.

#### 1.  *Louisiana Law Generally and Enrichment Without Cause Specifically*

"When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000) (citing *Transcon. Gas v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). "If the state's highest court has not spoken on the particular issue, 'it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.'" *Id.* (quoting *Transcon. Gas*, 953 F.2d at 988). Thus, "[o]ur task is to determine as best we can how the Louisiana Supreme Court would decide it." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850 (5th Cir. 2019) (cleaned up).

Because of Louisiana's civilian tradition, "Louisiana's 'Constitution, codes, and statutes' are of paramount importance to its judges." *Jorge-Chavelas*, 917 F.3d at 851 (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)).

> Unlike stare decisis, which can flow from one decision, in the civil
> system numerous court decisions must agree on a legal issue to

> establish *jurisprudence constante* (French for constant jurisprudence). And even when that consensus exists in the caselaw, it remains only persuasive authority for the *Erie* guess; "we are not strictly bound" by the decisions of Louisiana's intermediate courts.

*Id.*

In *Pierce Foundations, Inc. v. Jaroy Construction, Inc.*, 2015-0785 (La. 5/3/16); 190 So. 3d 298, the Louisiana Supreme Court summarized its own case law and the relevant statutes governing interpretation of Louisiana laws as follows:

> Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. The starting point for interpretation of any statute is the language of the statute itself. Additionally, all laws pertaining to the same subject matter must be interpreted in *pari materia*, or in reference to each other. When, on the other hand, a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. In such cases, the statute must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.

*Id.* at 303 (cleaned up).

Louisiana Civil Code article 2298 is the basis for Plaintiff's unjust enrichment claims. This article provides in relevant part:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

La. Civ. Code art. 2298. Again, the Louisiana Supreme Court has provided the following five

elements for this cause of action:

> (1) there must be an enrichment, (2) there must be an
> impoverishment, (3) there must be a connection between the
> enrichment and resulting impoverishment, (4) there must be an
> absence of "justification" or "cause" for the enrichment and
> impoverishment, and finally (5) the action will only be allowed
> when there is no other remedy at law, i.e., the action is subsidiary or
> corrective in nature.

*Minyard v. Curtis Prods., Inc.*, 205 So. 2d 422, 432 (La. 1968).

### 2. *Pleading Unjust Enrichment with Breach of Contract Claims*

In *Liberty Mutual Fire Insurance Co. v. Shaw Group, Inc.*, this Court decided that,

generally, the existence of other available claims will preclude an unjust enrichment claim. No.

20-871, 2022 WL 896804 at *23 (M.D. La. Mar. 25, 2022) (deGravelles, J.) (citations omitted).

The court, however, "rejected the 'blanket proposition that no Plaintiff may ever plead an unjust

enrichment claim alongside a claim which would grant a remedy at law.'" *Id.* at *24 (citing *Prop.*

*One, Inc. v. USAgencies, L.L.C.*, No. 11-453, 830 F. Supp. 2d 170, 181 (M.D. La. Nov. 11, 2011)).

This Court found that an unjust enrichment claim may be brought as an alternative claim when the

validity or existence of the contract is in question. *Id.*

Plaintiff claims that, as in *Perez*, there is a dispute as to whether an oral contract between

Belden and Pharaoh existed. (Doc. 34 at 12 (citing *Perez v. Utility Constructors, Inc.*, No. 15-

4675, 2016 WL 5930877 (E.D. La. Oct. 12, 2016) (Africk, J.)) (where the Eastern District of

Louisiana held that the unjust enrichment claim should not be dismissed until the validity of the

contract could be determined).) This argument, however, was not raised in any complaint filed by

Plaintiff.

While Plaintiff did argue *in its Opposition* that the "validity or existence of [the oral] contract has been long contested," (Doc. 34 at 7), and that there was insufficient cause for the oral contract, these claims were not included in the *Second Amended Petition*, (*Id.* at 10). The first time that the dispute about the validity of the contract was raised was Plaintiff's *Memorandum in Opposition* to Defendant's *Original MTD*. (Doc. 8 at 8.) Despite later filing the *Second Amended Petition*, Plaintiff did not include these claims or contentions in that pleading.

The Court cannot consider allegations made for the first time in the opposition to a motion to dismiss. *See Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 677–78 (M.D. La. 2019) (deGravelles, J.) ("Plaintiff argues in its opposition that it was an "unsophisticated" user (not a consumer), but a motion to dismiss is evaluated on the operative complaint, not a plaintiff's opposition." (citing *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (stating that, on a Rule 12(b)(6) motion, "a court assesses the legal sufficiency of the complaint"); *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (refusing to consider "new factual allegations" presented by plaintiff in her opposition to defendants' motion to dismiss because "'[i]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'" (citing *In re Enron Corp Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011)).

Looking only at the face of the operative complaint, the Court finds that the existence and validity of the contract between Plaintiff and Pharaoh is not questioned. Plaintiff claims in the *Second Amended Petition* that it entered into an oral contract with Pharaoh to perform services. (Doc. 26 at 4.) While there may be some disagreement as to the precise terms of that contract, there is no allegation in this pleading that indicates that Plaintiff was challenging the existence of

the contract for lack of cause. Thus, even construing the allegations of the controlling complaint in a light most favorable to Plaintiff and drawing reasonable inferences in its favor, Plaintiff has failed to adequately plead that there is a dispute as to the validity of the contract.

### 3. *Preclusion of the Unjust Enrichment Claim Against SWEPI*

#### a. The General Rule

Having concluded that there is no dispute about the validity of the contract between Pharoah and Plaintiff in the *Second Amended Petition*, the Court holds that the existence of that contract precludes Plaintiff from recovering on an unjust enrichment claim against SWEPI. Again, under Louisiana Civil Code Article 2298, a claim of unjust enrichment is limited to cases where there is no available remedy at law.

The Louisiana Supreme Court held in *Walters v. MedSouth Record Mgmt. L.L.C.* that when the law provides a plaintiff with an alternate remedy, the unjust enrichment action is precluded. 2010-0353 (La. 6/4/10); 38 So. 3d 243, 244. The next year, this Court, in *Property One, Inc.*, limited *Walters* to its facts, saying that unjust enrichment claims were only barred from being pled alongside tort claims. 830 F. Supp. 2d at 175. However, in *Liberty*, this Court held that unjust enrichment may be pled as an alternative to a breach of contract claim, but only if the existence or validity of the contract is in dispute. 2022 WL 896804.

In the present case, the *Second Amended Petition* does not raise any question about the existence or validity of the contract between Plaintiff and Pharaoh. Thus, under *Liberty*, Plaintiff is precluded from bringing the instant unjust enrichment claim in the alternative.

*b.* <u>Unjust Enrichment and Third Parties</u>

The Court's conclusion is unchanged by the fact that Plaintiff is bringing a breach of contract claim against one party (Pharaoh) and an unjust enrichment claim against a third party (SWEPI). Several cases support this conclusion.

First, in *Zaveri v. Condor Petroleum Corp.*, Zaveri and Condor had entered into contracts involving oil and gas development in Louisiana. 27 F. Supp. 3d 695, 707 (W.D. La. 2014) (Hill, M.J.). The court held that Zaveri could not recover based on unjust enrichment because there were other remedies available through the breach of contract claim. *Id.* The Western District of Louisiana found that "'[t]he mere fact that a plaintiff does not successfully pursue another remedy does not give the plaintiff the right to recover under the theory of unjust enrichment.'" *Id.* at 700 (citing *Walters*, 38 So. 3d at 244 (citing *Jim Walter Homes v. Jessen*, 1998-1685 (La. App. 3d Cir. 3/31/99); 732 So. 2d 699, 706)). Unjust enrichment is meant to "'fill a gap in the law where no express remedy is provided.'" *Id.* at 700 (citing *Walters*, 38 So. 3d at 244). Thus, "the remedy provided by unjust enrichment is precluded where the available remedy at law is against someone other than the person against whom the claim is presently asserted." *Id.*

Similar reasoning applies here. Plaintiff has an available remedy through its breach of contract or suit on open account claims against Pharaoh. It is not necessary for Plaintiff to be successful on the available claims, just that it is able to bring the claims. *Id.* at 701. Plaintiff cannot bring an unjust enrichment claim against SWEPI simply because it is asserting no other claims against SWEPI. *Id.* at 700. Rather, the existence of the breach of contract and open account claims against Pharaoh give Plaintiff a potential remedy to recover the damages suffered, precluding the unjust enrichment claim against SWEPI. Phrased another way, Plaintiff seeks the same damages

14

from Pharaoh and SWEPI, and Plaintiff's breach of contract claim against Pharaoh is a "remedy available at law" which precludes any unjust enrichment claim against SWEPI.

The Court's conclusion is also supported by *Insulation Technologies, Inc. v. Industrial Labor & Equipment Services, Inc.* There, Insulation Technologies, Inc. was a subcontractor who was seeking contractual remedies against its contractor, ILES. *Insulation Techs., Inc. v. Indus. Lab. & Equip. Servs., Inc.*, 2013-0194 (La. App. 4th Cir. 8/14/13); 122 So. 3d 1146. The plaintiff was also seeking unjust enrichment damages from BP, the oil company who was paying the contractor. *Id.* at 1149. The Louisiana Fourth Circuit Court of Appeal held that "[t]he existence of a contractual remedy against ILES for the compensation it owes to Insultech precludes Insultech from maintaining a cause of action in unjust enrichment against BP for the same damages." *Id.* at 1151.

As in *Insulation Techs. Inc.*, Plaintiff is not able to seek recovery for unjust enrichment from a third-party when there are contractual remedies for the same damages. Plaintiff is seeking unjust enrichment as an alternative to its breach of contract claim, not alleging separate damages caused by SWEPI's unjust enrichment. (Doc. 26 at 8.) Again, Plaintiff is able to seek these damages from Pharaoh through its breach of contract and open account claims.

### c.   Plaintiff's Authority and Ultimate Conclusion

While Plaintiff cited several cases that allow a party to bring an unjust enrichment claim as an alternative to a breach of contract claim when the validity of the contract is contested, it does not cite any cases that allow an unjust enrichment claim against one party when there is a valid breach of contract claim against another party.

Plaintiff claims that the Louisiana Supreme Court in *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, allowed an unjust enrichment claim against a third party, A-Second Mortgage

15

Company. (Doc. 34 at 6). A-Second, however, was not truly a third party. *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So. 2d 116, 123 (La. 1974). Mrs. Edmonston had obtained a mortgage on her house and lot from Standard Life Insurance, and she and her husband were required to take out life insurance policies on themselves. *Id.* at 118. Later, the Edmonstons took out a second mortgage on the same property from A-Second. *Id.* at 119. After a few years, the Edmonstons turned their house and lot over to A-Second to discharge their debt. *Id.* This transferred the initial mortgage to A-Second, who made payments on the mortgage and life insurance. *Id.* Once Mr. Edmonston died, the life insurance became payable, and Standard Life Insurance took the remaining balance on the mortgage out of the payment that Mrs. Edmonston was to receive. *Id.* A-Second was found to have been unjustly enriched by this transaction, because it was able to keep the house and lot while not having to pay the remaining balance of the mortgage. *Id.* at 121–23.

*Edmonston* is distinguishable. That case does not stand for the proposition that a party can simultaneously assert a breach of contract claim against one party and an unjust enrichment claim against a different third party for the same damages (which is the situation in the instant case). Rather, in *Edmonston*, the unjust enrichment claim was not asserted against a third party but rather against a party (A-Second) that assumed the obligation of the original obligor (Mrs. Edmonston). Thus, *Edmonston* does not entitle Plaintiff to relief.

In sum, the Court finds that Plaintiff has failed to state a claim for unjust enrichment against SWEPI. The existence or validity of the contract between Plaintiff and Pharaoh is not in question. Since Plaintiff did not claim that the contract was null in the operative complaint and SWEPI and Pharaoh agree that there was a contract, for purposes of this motion, there is no real dispute as to whether there was a contract between the parties. Because Plaintiff has a contractual remedy

against Pharaoh, Plaintiff is precluded from bringing an unjust enrichment claim against SWEPI.

For these reasons, SWEPI's *Renewed MTD* must be granted.[2]

## IV.    LEAVE TO AMEND

"Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). "A court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1995). In *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, the court said:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

313 F.3d 305, 329 (5th Cir. 2002). Further:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district

---

[2] Given the Court's ruling it need not address whether the LOWLA privilege was available to Plaintiff, as the unjust enrichment claim can be dismissed without considering it.

> court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

*JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 642 (M.D. La. 2018) (deGravelles, J.) (quoting 5b Charles A. Wright, Arthur R. Miller, *et al., Federal Practice and Procedure* § 1357 (3d ed. 2016)).

Plaintiff attempted to raise the issue of whether the underlying contract was valid in its *Opposition*. (Doc. 34 at 9.) If Plaintiff were to challenge the validity of the contract in its complaint, it might be able to assert a claim against Pharaoh for unjust enrichment in the alternative. However, amendments to allege an unjust enrichment claim against SWEPI are likely futile; the presence of an unjust enrichment claim against Pharaoh precludes an unjust enrichment claim against SWEPI for the same damages. *Insulation Techs., Inc.*, 122 So. 3d at 1151.

Nevertheless, though Plaintiff has already amended its complaint twice, once in response to SWEPI's *Original MTD*, neither amendment was done because of a judicial order. Thus, while it is unlikely that Plaintiff will be able to assert a claim against SWEPI that will survive a 12(b)(6) motion, the Court will act in accordance with the above "wise judicial practice" and grant Plaintiff leave to amend. *See Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La. 2021) (deGravelles, J.) (citing, *inter alia, Fetty v. La. State Bd. of Priv. Sec. Exam'rs*, No. 18-517, 2020 WL 520026, at *15 (M.D. La. Jan. 31, 2020) (deGravelles, J.)).

But, the Court cautions Plaintiff. The petition has already been amended twice, and this case has been pending since January of 2022. Further, the Court has outlined in detail the reasons why Plaintiff failed to state a claim. If the Court finds that Plaintiff has filed a third amended

18

petition frivolously, it will consider sanctions against Plaintiff under Rule 11, which may include

an award of attorney's fees to SWEPI. *See Liberty*, 2022 WL 896804, at \*25–26 (citing Fed. R.

Civ. P. 11(b)(2), (3)).

V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Re-Urged Rule 12(b)(6) Motion to Dismiss* (Doc. 31) filed by

SWEPI L.L.C., successor to SWEPI L.P., and Shell Legacy Holdings, L.L.C., is **GRANTED**, and

all claims by Belden Investments, L.L.C., against SWEPI LLC, successor to SWEPI LP, and Shell

Legacy Holdings, LLC, are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-eight (28) days from the

Court's ruling on SWEPI's *Re-Urged Rule 12(b)(6) Motion to Dismiss* (Doc. 31) in which to cure

the above deficiencies. If Plaintiff fails to do so, Plaintiff's claims against SWEPI will be dismissed

with prejudice.

Signed in Baton Rouge, Louisiana, on September 14, 2023.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**